**CLARKSON LAW FIRM, P.C.**
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Benjamin J. Fuchs (SBN 320793)
*bfuchs@clarksonlawfirm.com*
Meg Berkowitz (SBN 352358)
*mberkowitz@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPHINE CROSS and SCOTT ASCHENBRENNER, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MADHAVA HONEY, LTD., <br><br> Defendant. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) <br> 2. Violation of False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*) <br> 3. Violation of Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*) <br> 4. Breach of Warranty <br> 5. Unjust Enrichment <br><br> **JURY TRIAL DEMAND** |

Plaintiffs Josephine Cross and Scott Aschenbrenner ("**Plaintiffs**"), individually and on behalf of all others similarly situated, as more fully described below (the "**Class**" and "**Class Members**"), bring this class-action complaint against Madhava Honey, Ltd. dba Madhava Natural Sweeteners ("**Defendant**" and/or "**Madhava**") and allege the following based upon information and belief unless otherwise expressly stated as based upon personal knowledge.

## I.  INTRODUCTION

1.      Awareness of dangerous chemicals lurking in everyday food products has surged in recent years. Consumers and families are therefore increasingly seeking "clean" foods, and those advertised as such. This phenomenon is sometimes referred to as the clean movement.

2.      Marketers have taken notice, especially because they understand consumers will pay more for a "clean" product. This makes sense: Few want to feed their families toxic chemicals present in manufacturing processes and supply chains nationwide, if they can help it.

3.      One category of harmful chemicals that has gained attention is phthalates—synthetic, toxic-to-human-health substances primarily used to make plastics more flexible and durable. The health risks associated with phthalates are severe and well-documented, including disruption of reproductive functions of both women and men, birth defects, impaired brain development in children, and more.

4.      The good news is that manufacturing processes do not require the use of phthalates. Safe, effective alternatives exist. As consumer demand for clean products has grown, many companies have elected to adopt these responsible alternatives.

5.      Although these alternatives can increase manufacturing complexity and cost, a clean product promise differentiates a brand from others in a way that matters to consumers, thus driving loyalty and sales. Companies also know consumers are willing to pay more for clean products, thus subsidizing additional production costs.

CLASS ACTION COMPLAINT

6.      When this model works, everybody wins: Companies differentiate their brands by demonstrating a commitment to consumer health, while consumers enjoy better and safer foods. Unfortunately, as is often the case with popular marketing movements, unscrupulous actors can enter the market, exploit the situation, and spoil the deal.

7.      Such is the case here with Madhava, a vocal player in the clean movement, and its expensive line of olive and avocado oils. The company has claimed ownership over its entire production process—from "soil to the bag"—and prominently declares that its oils are "clean." This promise of clean is boldly displayed on the product packaging, front and center, alongside other declarations of cleanliness and "purity."

8.      It's all untrue. Independent testing by fully accredited labs has revealed that Madhava's purportedly clean oils are, in fact, infused with significant levels of toxic phthalates and other dangerous plasticizers. Every variety, multiple batches, across time and geography. It's all unclean.

9.      It's also unfair. While other olive and avocado oil brands may contain toxic substances like phthalates too, none of them affirmatively promote their oils as clean, because that would be dishonest. Madhava therefore gains an unfair competitive advantage in the marketplace, selling oils with toxic chemicals at a premium price, up to twice the cost of brands that tell the truth, and without all the added production costs it would incur were it to actually take advantage of phthalate-free processing alternatives.

10.     Madhava's customers, in turn, are misled into paying more for foods they reasonably believe are safer for their families, only to find out the oils fail to live up to Madhava's clean promise. This also stifles innovation in the market, harming all consumers, as smaller, more resource-constrained companies are unable to enter a market unfairly dominated by Madhava with oils that would be truly safe and clean.

11.    This perpetuates a troubling cycle of market fraud, reducing consumer choice, limiting access to healthier options, and driving up prices at the point of sale. The consequences are especially concerning for a food staple like cooking oil, purchased and used daily in households worldwide.

12.    Against this backdrop, Madhava is free to continue selling oils ridden with toxic phthalates. What it cannot do under consumer protection laws is continue to declare those oils clean. This class action therefore seeks to stop Madhava's unlawful market deception going forward, while securing refunds for the hundreds of thousands of consumers who have already been unfairly charged for unclean oil.

13.    **The Products** at issue are Madhava's Organic Extra Virgin Olive Oil ("**Organic EVOO**") and Non-GMO Avocado Oil ("**Avocado Oil**"), each of which comes in a 500-milliliter bottle and a one-liter tin. Images of the four iterations of Defendant's Products[1] are shown below:

//
//
//
//
//
//
//
//
//
//

---

[1] The first and second Product images were taken from Defendant's official website, https://www.madhavafoods.com/ (last visited Dec. 20, 2024). The third Product image was taken from Defendant's official Facebook page, https://www.facebook.com/photo?fbid=964577202367175&set=a.472954374862796 (last visited Dec. 20, 2024). The fourth Product image was taken from Defendant's official Amazon store, https://www.amazon.com/MADHAVA-Avocado-Neutral-Cooking-520-Degree/dp/B09ZW168TR? (last visited Dec. 20, 2024).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265



CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265



14.    Consumers understand Defendant's "Clean & Simple" and "Purity" representations to mean the Products are clean, pure, and free of toxic substances— an understanding further reinforced by the label's "Clean Label Project" seal of

7

approval based on testing "for 130 Contaminants" (collectively, the "**Challenged Representations**"). These affirmative label claims go well beyond implied representations of safety already extant by virtue of Defendant's manufacturing and selling the Products as food suitable for human consumption.

15.    In truth—and in direct contradiction with these representations—the Products contain significant amounts of toxic phthalates, man-made chemicals, and other dangerous plasticizers, rendering them neither "Clean & Simple" nor pure.

16.    Independent and accredited lab testing of Defendant's Products from multiple retail sources confirms earlier independently published testing and reports revealing that the Products are neither clean nor pure but instead contaminated by at least two different types of toxic phthalates as well as one non-phthalate but also dangerous plasticizer—all of which pose serious threats to human health. These three toxic substances and their respective test results are as follows:

- **Bis (2-Ethylhexyl) Phthalate ("DEHP"):** Independent testing shows the Products contain between 2.13 and 19.095 micrograms of DEHP per serving.

- **Diisononyl Phthalate ("DINP"):** Independent testing shows the Products contain between 14.95 and 37.8 micrograms of DINP per serving.

- **Dibutyl Sebacate ("DBS"):** Independent testing results show the Products contain between 0.69 and 20.76 micrograms of non-phthalate plasticizer DBS per serving.

17.    Testing of the Products reveals that various iterations of the Products also contain additional types of toxic plasticizers beyond DEHP, DINP, and DBS. These

8

include dibutyl phthalate, which the U.S. Food and Drug Administration has deauthorized for use in products like Defendant's that involve food contact use.[2]

18.    In total, the representative tested Products contained significant levels of toxic substances: *between 18.43 and 850.65 micrograms of phthalates per serving*. Any level of these toxic substances, which can be prevented and removed by safe, effective, phthalate-free processing, renders the affirmative clean label claims false. Even worse, these verified lab results include levels of certain phthalates that approach or even exceed a person's Maximum Allowable Dose Level ("MADL") for phthalates established under California's Proposition 65, which regulates chemicals that pose threats to human reproductivity.

19.    Reasonable consumers want to know whether a food product they are considering can increase their risk of cancer, cause organ damage, or harm reproductive health. Such information is critical to making informed purchasing decisions, especially as awareness of toxic chemicals like phthalates has surged, driving the whole clean food movement.

20.    Rather than be honest and transparent with its customers, or even say nothing at all, Madhava elected to capitalize on the desire for clean foods and deliberately mislead Plaintiffs and other consumers by affirmatively acknowledging ownership over the oils' entire production process and promising its Products are clean, simple, and pure, assertions that are demonstrably untrue given product testing confirming the presence of significant levels of toxic phthalates and other plasticizers, which pose significant health risks. This deceptive practice undermines consumer trust, impedes informed purchase decisions, and puts health at risk.

21.    Madhava has at all relevant times had full knowledge of the Products' toxic contents, as the company designed, manufactured, promoted, distributed, and

---

[2] *Indirect Food Additives: Adhesives and Components of Coatings; Paper and Paperboard Components; Polymers; Adjuvants, Production Aids, and Sanitizers*, FOOD AND DRUG ADMINISTRATION (May 19, 2022), https://www.regulations.gov/document/FDA-2018-F-3757-0017.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

sold the Products in a manner that has allowed the toxic substances in the Products, rather than taking advantaging of alternative processes that can prevent or remove toxic substances, used by responsible companies that wish to honestly market their products as clean. This is especially troubling given Madhava's marketing and branding, which prominently promises "clean" products and touts a commitment to tracking product quality and integrity "[f]rom the soil to the bag." Madhava is also on notice due to the widespread publication of earlier lab results, prior to Plaintiffs' confirmatory testing, and the public's resulting outrage that the perceived market choice for "clean" olive and avocado oils, Madhava, was anything but.

22.     Through falsely, misleadingly, and deceptively labeling, advertising, and marketing the Products, Madhava has sought to take advantage of unwitting consumers as well as Madhava's lawfully acting competitors, over whom Madhava maintains an unfair competitive advantage. That's because other oils on the market with toxic phthalates or other synthetic chemicals do not falsely claim to be clean.

23.     **Primary Dual Objectives.** Plaintiffs bring this action individually and in a representative capacity on behalf of those similarly situated consumers who purchased the Products during the relevant Class Period (Class and/or Subclass defined *infra*) for dual primary objectives. ***One***, Plaintiffs seek on behalf of themselves and the proposed Class a monetary recovery of the price premium Plaintiffs and consumers have overpaid for Products that should, but fail to, comport with the Challenged Representations, as consistent with permissible law (including, for example, damages, restitution, disgorgement, and any applicable penalties/punitive damages solely as to those causes of action so permitted). ***Two***, Plaintiffs seek on behalf of themselves and the proposed Class injunctive relief to stop Madhava's unlawful design, manufacture, marketing, and sale of the Products with the Challenged Representations to eliminate or mitigate the future risk of deceiving the public into believing that the Products are free from toxic chemical substances like phthalates by requiring Madhava to change its business practices,

which may include one or more of the following: immediate removal of all phthalates and other toxic plasticizers from the Products accompanied by the initiation of an independent monitoring program to ensure the Products thereafter *remain* plasticizer-free; removal or modification of the Challenged Representations from the Products' labels; the addition of front-label warnings adequately informing consumers that the Products contain phthalates and other toxic plasticizers; and/or discontinuance of the Products' manufacture, marketing, and/or sale.

## II.  JURISDICTION

24.    This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. Section 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over this action's state law claims pursuant to 28 U.S.C. Section 1367.

## III.  VENUE

25.    Venue is proper in this District under 28 U.S.C. Section 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District. Specifically, as detailed below, Plaintiffs both purchased the unlawful Products in this District, and Defendant has marketed, advertised, and sold the Products within this District.

## IV.  PARTIES

**Plaintiffs**

26.    **Plaintiff Josephine Cross.** The following is alleged based upon Plaintiff Josephine Cross' personal knowledge:

    a.  **Residence.** Plaintiff Cross is a resident of Los Angeles County in the state of California.

    b.  **Purchase Details.** Plaintiff Cross purchased the Madhava Organic EVOO (the "Purchased Product") for approximately $30 from a

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

11

Ralphs store in Chatsworth, California in or around fall 2023.

c. **Reliance on Challenged Representations**. In making her purchase, Plaintiff Cross read the "Clean & Simple" and "Purity" representations on the Product's label, leading Plaintiff Cross to believe that the Product was free from any substance other than oil derived from olives and free of toxic substances like phthalates and other toxic plasticizers.

d. **No Actual Knowledge of Falsity.** At the time of her purchase, Plaintiff Cross did not know that the "Clean & Simple" and "Purity" representations were false in that Plaintiff Cross did not know that the Product was contaminated with phthalates and other toxic plasticizers.

e. **No Notice of Contradictions.** Plaintiff Cross did not notice any disclaimer, qualifier, or other explanatory statement or information on the Product's label that contradicted the prominent Challenged Representations or otherwise suggested that the Product in fact contained toxic phthalates and other toxic plasticizers.

f. **Causation/Damages.** Plaintiff Cross would not have purchased the Product or would not have paid as much for the Product, but for the Challenged Representations—i.e., that the Product is "Clean & Simple" and "Pur[e]" olive oil, as further reinforced by the label's "Clean Label Project" seal of approval.

g. **Desire to Repurchase.** Plaintiff Cross continues to see the Products available for purchase, continues to desire truly "clean" oil, and thus would consider purchasing the Products again in the future if she could be sure the Products delivered their advertised benefits.

h. **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff Cross is not personally familiar with the formulation of the Products, as she does not possess any specialized knowledge, skill, experience, or education in the manufacturing of olive oil or plasticizer

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

contamination during the manufacturing, storage, and packaging of food products. Thus, Plaintiff Cross is unable to determine whether the Products' Challenged Representations are true—i.e., whether the Products are "Clean & Simple" and "Pur[e]" oils that are free from toxic substances like phthalates and other plasticizers that might pose risks to consumers.

27.  **Plaintiff Scott Aschenbrenner.** The following is alleged based upon Plaintiff Scott Aschenbrenner's personal knowledge:

a.  **Residence.** Plaintiff Aschenbrenner is a resident of Los Angeles County in the state of California.

b.  **Purchase Details.**

- Plaintiff Aschenbrenner purchased the Madhava Organic EVOO for approximately $30 from either a Ross or Sprouts store in Los Angeles, California in or around fall 2023.

- Plaintiff Aschenbrenner also purchased the Madhava Avocado Oil in or around Los Angeles, California in or around early 2023. (Plaintiff Aschenbrenner's two purchases referenced herein are referred to collectively as the "Purchased Products.")

c.  **Reliance on Challenged Representations**. In making his purchases, Plaintiff Aschenbrenner read the "Clean & Simple" and "Purity" representations on the Products' labels, leading him to believe that the Products were free from any substances other than oils derived from olives and avocados, respectively, and free of toxic substances like phthalates and other toxic plasticizers.

d.  **No Actual Knowledge of Falsity.** At the time of his purchases, Plaintiff Aschenbrenner did not know that the "Clean & Simple" and "Purity Award" representations were false in that he did not know that the Products were contaminated with phthalates and other toxic

13

CLASS ACTION COMPLAINT

plasticizers.

e. **No Notice of Contradictions.** Plaintiff Aschenbrenner did not notice any disclaimer, qualifier, or other explanatory statement or information on either of the Products' labels that contradicted the prominent Challenged Representations or otherwise suggested that the Products in fact contained toxic phthalates and other toxic plasticizers.

f. **Causation/Damages.** Plaintiff Aschenbrenner would not have purchased the Products or would not have paid as much for the Products, but for the Challenged Representations—i.e., that the Products are "Clean & Simple" and "Pur[e]" olive and avocado oils, respectively, as further reinforced by the labels' "Clean Label Project" seal of approval.

g. **Desire to Repurchase.** Plaintiff Aschenbrenner continues to see the Products available for purchase, continues to desire truly "clean" oils, and thus would consider purchasing the Products again in the future if he could be sure the Products delivered their advertised benefits.

h. **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff Aschenbrenner is not personally familiar with the formulation of the Products, as he does not possess any specialized knowledge, skill, experience, or education in the manufacturing of olive or avocado oils or plasticizer contamination during the manufacturing, storage, and packaging of food products. Thus, Plaintiff Aschenbrenner is unable to determine whether the Products' Challenged Representations are true—i.e., whether the Products are "Clean & Simple" and/or "Pur[e]" oils that are free from toxic substances like phthalates and other plasticizers that might pose risks to consumers.

28.    **Plaintiffs' Future Harm.** Madhava continues to label and sell the Products with the Challenged Representations. However, Plaintiffs are average consumers who are not sophisticated in the use of plasticizers in plastic production and contaminating food products. Since Plaintiffs would like to purchase the Products again—despite that the Products were once marred by false advertising or warranties—Plaintiffs would likely and reasonably, but incorrectly, assume that the Products are "Clean & Simple," or trust in Madhava's assurance that the Products have been independently tested for "Purity" and free of toxic substances. Accordingly, Plaintiffs are at risk of reasonably, but incorrectly, assuming that Madhava has fixed the Products such that Plaintiffs may buy them again, believing they are no longer falsely advertised and warranted. In this regard, Plaintiffs are currently and, in the future, deprived of the ability to purchase the Products.

**Defendant**

29.    Defendant Madhava Honey Ltd. dba Madhava Natural Sweeteners is a corporation that has a principal place of business in Boulder, Colorado. Madhava was doing business in the state of California at all relevant times. Directly and through its agents, Madhava has substantial contacts with and receives substantial benefits and income from and through the state of California. Madhava is the owner, manufacturer, and/or distributor of the Products. Madhava and its agents promoted, marketed, and sold the Products at issue throughout the United States, including, in particular, within the state of California. The unfair, unlawful, deceptive, and misleading Challenged Representations on the Products were prepared, authorized, ratified, and/or approved by Madhava and its agents to deceive and mislead consumers within the state of California into purchasing the Products. Madhava issued the Challenged Representations despite knowing full well that the Products—which it designed, manufactured, marketed, and sold—contained toxic substances. Plaintiffs and the proposed Class Members purchased the Products despite its duty to do so. Further, Madhava at all relevant times had the right and authority to

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

discontinue use of the Challenged Representations, including the time leading up to and through the incident giving rise to the claims asserted herein (including Plaintiffs' Product purchases described *supra* as well as all Class Members' purchases of the Products).

## V.    FACTUAL ALLEGATIONS

### A.    Madhava's Affirmative Representations Mislead Consumers to Believe the Products Are Free from Toxic Substances

30.    On average, the American consumer takes only about 13 seconds to make an in-store purchasing decision and 19 seconds to purchase goods online.[3] These decisions rely heavily on what consumers first see when considering the product: its packaging and front-label claims.[4]

31.    At the same time, study after study has shown that consumers are willing to pay significantly more for food products they believe are healthier than alternative options—including products that carry lower levels of ingredients seen as harmful.[5]

32.    Within a recent explosion in interest and investment by American consumers in health and wellness writ large, the United States "healthy labeled food and beverage" market sector is now valued at approximately *$223.5 billion*.[6] As part

---

[3] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN (Jan. 2015), https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-window/.

[4] *Id.*

[5] *See, e.g.,* Moosa Alsubhi, et al., *Consumer willingness to pay for healthier food products: A systematic review*, OBESITY REVIEWS (Nov. 7, 2022), https://doi.org/10.1111/obr.13525 (a meta-analysis of 15 studies finding that 23 of 26 surveyed experiments found consumers would pay price premiums of 5.6 percent to 91.5 percent (with a mean of 30.7 percent) for healthier foods, with results reflecting broad willingness to pay more for foods lower in ingredients perceived as harmful).

[6] *United States Wellness Economy Now Valued at $1.8 Trillion – The Largest Wellness Market in the World*, GLOBAL WELLNESS INSTITUTE (Apr. 17, 2024) https://globalwellnessinstitute.org/press-room/press-releases/united-states-wellness-economy-now-valued-at-1-8-trillion-the-largest-wellness-market-in-the-world/.

16

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

of the clean food movement, consumers seek out and are willing to pay more for foods labeled clean.

33.    Madhava capitalizes on these well-publicized phenomena by appealing to this specific market through its Product presentation: On the Products' front labels, Madhava represents that the Products are "Clean & Simple" in prominent black font contrasted against a white background immediately below the company name. Defendant further reinforces this false claim by boasting on the Products' front labels that each Product has also received a "Purity Award" from the "Clean Label Project" after having been "Tested for 130 Contaminants."

34.    Madhava's label claims are consistent with and bolstered by the company's overall branding, which centers on quality assurance throughout the supply chain as well as the cleanliness and purity of Madhava's roster of products.

35.    For example, on both its Product labels and website, Defendant relies heavily on the Clean Label Project's literal and figurative seal of approval. In addition to the Clean Label Project "Purity Award" seal adorning the front label of each of its Products, Madhava on its website promotes its Organic EVOO Products as "the only olive oil independently tested and certified clean and pure by the Clean Label Project—setting a new standard for purity in culinary oils." Madhava similarly markets its Avocado Oil Products as "the only avocado oil independently tested and certified clean and pure by the Clean Label Project, setting a new standard for purity in culinary oils."

36.    Madhava states on its website that it works with the Clean Label Project because "Madhava's commitment to purity aligns perfectly with their mission." The Clean Label Project describes itself as seeking "to bring truth and transparency to food and consumer product labeling" and ensure that consumers are made aware of "the health consequences of exposure to heavy metals, pesticide residues, and

plasticizers"—information that "consumers will never find . . . on product labels."[7] The Project states that it is "committed to changing the definition of food and consumer safety through the use of data, science, and transparency," and that it "award[s] brands with products that place an emphasized focus on purity and surpass the minimum regulations required by FDA."

37.    The Clean Label Project issues several awards and certifications. These include the "Purity Award," which the Project introduces as a tool to help corporate "marketing departments" confront the challenge of "selling comfort and security" through the presentation of their companies' products. The Project states that it tests retail-purchased products for "purity"—i.e., for "chemicals of concern[,] including heavy metals, pesticide residues, and plasticizers"—and issues Purity Awards to the products "found to be among the top-performing in given category."

38.    Defendant's front-label Product claims are also consistent with the Products' ingredient lists on both the Products' back labels and the company's website as consisting of one ingredient apiece: "organic extra virgin olive oil"[8] and "non-GMO avocado oil,"[9] respectively. Madhava makes no mention of toxic phthalates on either its labels or website Product descriptions. Nor would consumers have any reason to expect toxic substances given the affirmative clean promise to the contrary.

39.    In the same spirit, Madhava makes the following additional representations on its official website, https://www.madhavafoods.com/, through which the company directs consumers to its official Amazon store as well as third-party online and brick-and-mortar retailers where the Products are sold:

---

[7] *About Us*, CLEAN LABEL PROJECT, https://cleanlabelproject.org/about-us/ (last visited Dec. 20, 2024).

[8] *Organic Extra Virgin Olive Oil*, MADHAVA, https://www.madhavafoods.com/products/organic-extra-virgin-olive-oil (last visited Dec. 20, 2024).

[9] *Non-GMO Avocado Oil*, MADHAVA, https://www.madhavafoods.com/products/non-gmo-avocado-oil (last visited Dec. 20, 2024).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

- "Pure, clean, simple."
- "The best ingredients crafted to bring out pure flavors as nature intended."
- "Obsessive purity you can taste."
- "Our food should be treated as kindly as it treats us. That's why we strive for purity in everything we produce. From the soil to the bag, we shun contaminants and pollutants."
- "The best things you can eat come straight from the source. And, those things don't need to be messed around with. Every Madhava product is Clean Label Project certified to be free from hundreds of toxins and contaminants."
- "Clean ingredients, better taste."
- "100% organic extra virgin olive oil"
- "Clean & simple foods that just taste better"
- "In our pursuit of purity, we've partnered with the Clean Label Project to double and triple check that our Madhava methods prevent environmental and industrial contaminants from getting in, resulting in natural, organic, rich flavors you can trust."
- "It's one thing to say your products are clean – it's another to have them independently verified by the Clean Label Project."
- Describing the Clean Label Project as "a national non-profit focused on health and transparency in consumer product labeling."
- "We go the extra mile to ensure that every ingredient we source is as pure and simple as nature intended."
- Stating that its products as a whole are "[t]riple-tested for over 200 harmful toxins and contaminants and sourced from pristine regions across the globe."[10]

---

[10] *About Madhava*, MADHAVA, https://www.madhavafoods.com/pages/origins (last visited Dec. 20, 2024).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

40.     Madhava's marketing web copy reinforces and amplifies the Products' false labeling, portraying the oils as clean, pure, and independently verified to satisfy those claims.

41.     As a result of Defendant's explicit misrepresentations, reasonable consumers are led to believe that Madhava's processing, manufacturing, storing, packaging, and ingredient sourcing for the Products are monitored to ensure that no toxic substances will end up in the oils—let alone ones that can cause cancer, reproductive harm, and other serious health issues—and that the Products are exceptionally pure, safe, and high-quality.

   **B.     The Products Contain Substantial Amounts of Toxic Phthalates and Other Dangerous Chemical Plasticizers**

42.     Madhava's affirmative claims that its Products are "Clean & Simple" and recipients of the "Purity Award" from the "Clean Label Project" after being "Tested for 130 Contaminants," starkly contrast with the undisclosed reality that the Products are neither clean nor pure but infused with significant levels of toxic phthalates and other chemical plasticizers.

43.     Independent testing confirms that Madhava's Products contain significant levels of toxic phthalates and other plasticizers, including up to 8.43 micrograms of DEHP and 37.8 micrograms of DINP.

44.     Each phthalate detected in the Products renders the product labeling false while also posing specific and significant risks to human health, even at minimal exposure levels. Given the serious health implications, including harm to the endocrine, reproductive, and other bodily systems, the presence of phthalates in these Products is highly material to consumers and their purchasing decisions. The clean food movement has only grown in popularity, with clean promises now a top purchase driver across food and product categories.

45.     Separately, the U.S. Environmental Protection Agency ("EPA") also regulates phthalates—including those found specifically in Defendant's Products—

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

under multiple federal statutes because of the risk of harm they pose to human health. For example, the agency regards phthalates discarded as commercial chemical products as hazardous waste under the Resource Conservation and Recovery Act,[11] sets maximum containment levels for DEHP under the Safe Drinking Water Act,[12] and lists certain phthalates as hazardous air pollutants under the Clean Air Act, with reporting required under Section 313 of the Emergency Planning and Community Right-to-Know Act.[13]

46.     California lawmakers and regulators have also taken notice of the dangers phthalates present—and taken action: Phthalates DEHP, DINP, and dibutyl phthalate ("DBP") are regulated under California's Proposition 65 as chemicals known to cause cancer and/or reproductive toxicity. Proposition 65 establishes "No Significant Risk Levels" and "Maximum Allowable Dose Levels"—addressing these chemicals' propensity to cause cancer and reproductive toxicity, respectively—as follows:

| Phthalate | NSRL (Cancer) | MADL (Reproductive Toxicity) |
|---|---|---|
| Bis(2-ethylhexyl) phthalate (DEHP) | 310 (adult) µg/day | 410 µg/day (adult)<br><br>58 µg/day (infant boys, age 29 days to 24 months)<br><br>20 µg/day (neonatal infant boys, age 0 to 28 days) |
| Diisononyl phthalate (DINP) | 146 µg/day | N/A |
| Diisodecyl phthalate (DIDP) | N/A | 2200 µg/day |
| Dibutyl phthalate (DBP) | N/A | 8.7 µg/day |

[11] *Phthalates Action Plan,* U.S. ENVIRONMENTAL PROTECTION AGENCY (Mar. 14, 2012), https://www.epa.gov/sites/default/files/2015-09/documents/phthalates_actionplan_revised_2012-03-14.pdf.

[12] *Public Health Statement on Di(2-ethylhexyl)phthalate (DEHP),* AGENCY FOR TOXIC SUBSTANCES AND DISEASE REGISTRY (Sep. 2002), https://www.atsdr.cdc.gov/ToxProfiles/tp9-c1-b.pdf.

[13] *Id.*

CLASS ACTION COMPLAINT

47.     Independent testing commissioned by Plaintiffs and third parties shows that *just one serving* (i.e., one tablespoon) of Defendant's supposedly clean Avocado Oil contains between approximately 28.035 and 850.65 micrograms of toxic phthalates, while one serving of Defendant's Organic EVOO contains between approximately 18.43 and 30.55 micrograms of toxic phthalates. More specifically, the same testing also demonstrates that Madhava's Avocado Oil Products contain up to 18.6 micrograms of DBP per serving—far exceeding the chemical's 8.7-milligram MADL—as well as up to 19.095 micrograms of DEHP per serving—i.e., close to DEHP's MADL for newborn boys.

48.     The Products' phthalate contents render these oils neither clean nor pure, as affirmatively misrepresented. But they also present serious health risks to Plaintiffs and other consumers as well as those they feed as they use Madhava's oils for their intended purpose: daily food preparation.

49.     The presence of phthalates in the Products contributes to a risk of harm to human health because phthalates are toxic, persistent, and prone to bioaccumulation (particularly in human fat cells, where they can cause inflammation[14]). This is true even when phthalates are ingested at levels lower than the established daily NSRL and MADL thresholds, as exposure at such levels is not entirely risk-free—a reality that is particularly so for long-term health impacts as well as more sensitive populations such as pregnant women, infants, and those with compromised health.

50.     Phthalates' impacts on human health are cumulative due to these chemicals' tendencies to bioaccumulate in certain tissues and to form harmful

---

[14] Ana María Rivas Velasco, et al., *Report of the Scientific Committee of the Spanish Agency for Food Safety and Nutrition (AESAN) on the available evidence in relation to the potential obesogenic activity of certain chemical compounds that may be present in foods*, REVISTA DEL COMITÉ CIENTÍFICO DE LA AESAN, 37:11 (Feb. 15, 2023), https://efsa.onlinelibrary.wiley.com/doi/pdf/10.2903/fr.efsa.2023.FR-0011.

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

metabolites that persist in the human body.[15] The risk of bioaccumulation is particularly acute where people are exposed to phthalates on a regular basis—as is the case here, where the phthalates' vectors—the Products—are common oils used by households across California and nationwide to cook, marinate, and dress foods on a daily basis.

51.    Research on the impacts of phthalates exposure on human health is robust and conclusive. For example, studies show that phthalates exposure can greatly harm the human reproductive system (for example, reducing testosterone levels and fertility in both men and women[16]) and act as an endocrine disruptor by interfering with the body's hormones.[17] Substantial evidence also connects phthalate exposure to neurotoxic effects, attention disorders, behavioral problems, and impaired learning.[18] Phthalate exposure can lead to hepatoxicity, metabolic toxicity,

---

[15] Clendruru Geya Sree et al., *Phthalate toxicity mechanisms: An update*, COMPARATIVE BIOCHEMISTRY AND PHYSIOLOGY PART C: TOXICOLOGY & PHARMACOLOGY, *263*:109498 (Jan. 2023), https://doi.org/10.1016/j.cbpc.2022.109498 (reflecting health risks since independent of the risk of bioaccumulation, phthalates remain in the human body for up to two days following exposure in the form of metabolites, which are the products of metabolic reactions).

[16] *Why phthalates should be restricted or banned from consumer products*, HARVARD T.H. CHAN SCHOOL OF PUBLIC HEALTH (Last updated Nov. 22, 2024), https://www.hsph.harvard.edu/news/features/the-big-3-why-phthalates-should-be-restricted-or-banned-from-consumer-products/; Jarett Casale & Ashley S. Rice, *Phthalates Toxicity*, STATPEARLS PUBLISHING (June 15, 2023), http://www.ncbi.nlm.nih.gov/books/NBK587442/; Amy Westervelt, *Phthalates are everywhere, and the health risks are worrying. How bad are they really?*, THE GUARDIAN (Feb. 10, 2015), https://www.theguardian.com/lifeandstyle/2015/feb/10/phthalates-plastics-chemicals-research-analysis.

[17] Yufei Wang & Haifeng Qian, *Phthalates and their impacts on human health*, HEALTHCARE, *9*(5), 603 (May 18, 2021), https://doi.org/10.3390/healthcare9050603.

[18] Stephanie M. Engel et al., *Neurotoxicity of Ortho-Phthalates: Recommendations for Critical Policy Reforms to Protect Brain Development in Children*, AMERICAN JOURNAL OF PUBLIC HEALTH, 111(4): 687–695 (Apr. 2021), https://doi.org/10.2105/AJPH.2020.306014.

23

pulmonary toxicity, renal toxicity, and cardiovascular toxicity.[19] Exposure to phthalates and their metabolites can lead to impaired renal function in both adults and children.[20] And multiple studies on healthy humans establish that phthalate exposure is positively associated with factors of obesity, such as increased waist circumference, increased body mass index, increased adipogenesis, dyslipidemia, and metabolic syndrome.[21]

52.      Research also supports that phthalate exposure causes demographic-specific health harm. For example, studies support that phthalate exposure can cause myriad health issues among women, including endometriosis, pubertal development disorders, reduced production of oocytes, infertility, and birth loss.[22] Additionally, studies have associated phthalates exposure with an increased likelihood of health issues among children, including autism, depression, anxiety, eczema, and allergic reactions.[23]

53.      Yet the harmful undisclosed ingredients in Defendant's Products are not

---

[19] Antolela Šimunović et al., *Medical devices as a source of phthalate exposure: A review of current knowledge and alternative solutions*, ARCHIVES OF INDUSTRIAL HYGIENE AND TOXICOLOGY, 73(3), 179–190 (Sep. 30, 2022), https://doi.org/10.2478/aiht-2022-73-3639.

[20] Jingsi Chen et al., *Association between Urinary Concentration of Phthalate Metabolites and Impaired Renal Function in Shanghai Adults*, ENVIRONMENTAL POLLUTION (Barking, Essex: 1987), 245: 149–162 (Feb. 2019), https://doi.org/10.1016/j.envpol.2018.10.044.; Miao Liu et al., *Urinary Phthalate Metabolites Mixture, Serum Cytokines and Renal Function in Children: A Panel Study,* JOURNAL OF HAZARDOUS MATERIALS, 422: 126963 (Jan. 15, 2022), https://doi.org/10.1016/j.jhazmat.2021.126963.

[21] Sai Sandeep Singh Rowdhwal & Jiaxiang Chen, *Toxic Effects of Di-2-Ethylhexyl Phthalate: An Overview*, BIOMED RESEARCH INTERNATIONAL, 2018: 1750368 (Feb. 22, 2018), https://doi.org/10.1155/2018/1750368.

[22] Limor Man et al., *Fragile x-associated diminished ovarian reserve and primary ovarian insufficiency from molecular mechanisms to clinical manifestations*, FRONTIERS IN MOLECULAR NEUROSCIENCE, 10 (Sep. 12, 2017), https://doi.org/10.3389/fnmol.2017.00290; Ju Hee Kim & Sung Hoon Kim, *Exposure to Phthalate Esters and the Risk of Endometriosis,* DEVELOPMENT & REPRODUCTION, 24(2): 71–78 (Jun. 30, 2020), https://doi.org/10.12717/DR.2020.24.2.71.

[23] Joseph M. Braun et al., *Phthalate Exposure and Children's Health*, CURRENT OPINION IN PEDIATRICS, 25(2): 247–254 (Apr. 2013), https://doi.org/10.1097/MOP.0b013e32835e1eb6.

limited to phthalates: In addition to the two phthalates found in Defendant's Products, independent testing shows that the Products contain up to 20.76 micrograms of dibutyl sebacate ("DBS") per serving. DBS is a non-phthalate plasticizer that, like phthalates, harms human health—in the case of DBS, through mildly toxic effects that may harm reproductive systems and serve as an endocrine disruptor when ingested.[24]

**C.    Consumers Were Misled by the Challenged Representations to Their Detriment**

54.    **Products.** Madhava manufactures, markets, promotes, advertises, labels, and sells Madhava EVOO and Madhava Avocado Oil, each of which displays all of the Challenged Representations on its front-facing label.

55.    **The Challenged Representations.** On the Products' front labels, Madhava conspicuously displays the Challenged Representations. Specifically, Madhava falsely and misleadingly labels the Products as "Clean & Simple" and further, that the Products have received a "Purity Award" from the "Clean Label Project" after having been "Tested for 130 Contaminants."

56.    **Reasonable Consumer's Perception.** The Challenged Representations and marketing claims lead reasonable consumers, like Plaintiffs, to believe that the Products are clean and pure olive and avocado oils that are free from toxic substances—like phthalates and other plasticizers that pose grave risks to human health. Many consumers are interested in consuming high-quality oils to avoid the detrimental health effects associated with the consumption of toxic substances like phthalates and other plasticizers. Front-label representations, such as the Challenged Representations, are material to such consumers' purchasing decisions. However, contrary to the Challenged Representations, Defendant's Products are neither "clean" nor "pure," as they contain substantial volumes of multiple types of toxic phthalates

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

[24] *Dibutyl Sebacate*, National Center for Advancing Translational Sciences, https://drugs.ncats.io/drug/4W5IH7FLNY (last visited Dec. 20, 2024).

CLASS ACTION COMPLAINT

as well as non-phthalate plasticizer DBS. Additionally, Defendant bolstered this deception by conveying its testing and "Purity" claims within the official-looking imprimatur of the "Clean Label Project" on its Products' front labels. As Defendant itself notes on its website, the Clean Label Project is "a national non-profit focused on health *and transparency in consumer product labeling*" (emphasis added). Consumers reasonably interpret the Products' inclusion of the Clean Label Project's seal and the testing for 130 containments referenced within to further reinforce the Products' overall "clean" promise.

57. **Materiality.** The Challenged Representations are material to reasonable consumers, including Plaintiffs, in deciding whether to buy the Products at their listed prices because it is important to a reasonable consumer whether food oils like the Products contain phthalates or other toxic substances. Consumers also seek out and are willing to pay more for products affirmatively labeled clean. Defendant's representations thus motivate Plaintiffs to buy the Products—either at all or at the price premiums at which they're sold.

58. **Reliance.** The Class, including Plaintiffs, reasonably relied on the Challenged Representations in deciding to purchase the Products, as Plaintiffs, as well as the Class, made their purchase decisions at least in part based on their reasonable belief that they would receive Products free of toxic substances like phthalates based on their promotion as "Clean & Simple" and deserving of the "Purity Award" from the "Clean Label Project" following "Test[ing] for 130 Contaminants."

59. **Falsity.** The Challenged Representations are false, misleading, and deceptive because, contrary to the Challenged Representations the Products contain significant amounts of toxic phthalates and other toxic plasticizers. The Challenged Representations on the Products' front labels are therefore literally false.

60. **Consumers Lack Knowledge of Falsity.** Plaintiffs and the proposed Class Members had no reason to know at the time of purchase that the Products' Challenged Representations are false, misleading, deceptive, and unlawful.

Consumers rely on the Challenged Representations to mean the Products are free from toxic substances like phthalates and other toxic plasticizers. Unlike Defendant, Plaintiffs and the proposed Class Members do not possess the specialized knowledge required to conclude that olive and avocado oil products with front-label representations proclaiming the Product as "Clean & Simple," further reinforced with the "Purity Award" from the "Clean Label Project" following "Test[ing] for 130 Contaminants," are neither clean nor pure—or even safe—due to the presence of hidden phthalates and other toxic plasticizers.

61.    **Madhava's Knowledge.** Madhava knew or should have known that the Challenged Representations were false, misleading, deceptive, and unlawful at the time it manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representations to Plaintiffs and the Class.

a.    **Knowledge of Reasonable Consumers' Perception.** Madhava knew or should have known that the Challenged Representations would lead reasonable consumers to believe that the Products labeled "Clean & Simple" and deserving of the "Purity Award" from the "Clean Label Project" after having been "Tested for 130 Contaminants" are pure, safe, and high-quality, and thus do not contain toxic substances like phthalates. This is supported by, for example, the fact that Madhava, in pursuing Purity Award recognition for its Products, sought out commissioned Product reviews advertised by the Clean Label Project as a tool to help corporate "marketing departments" confront the challenge of "selling comfort and security" to consumers. Not only has Madhava utilized a longstanding brand strategy to identify the Products as pure and clean food oils that are free from toxic substances, but Madhava also has an obligation under Section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. Section 45, *et seq*., to evaluate its marketing claims from the perspective of the reasonable consumer. That means Madhava was

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

statutorily obligated to consider whether the Challenged Representations, be they in isolation or conjunction with its marketing strategy, would mislead reasonable consumers into believing that the Products are pure and clean oils free from toxic substances. Thus, Madhava either knew that the Challenged Representations were misleading before it marketed the Products to the Class, including Plaintiffs, or Madhava would have known that they were deceptive had it complied with its statutory obligations.

b. **Knowledge of Falsity.** Madhava manufactured and marketed the Products with the Challenged Representations, but Madhava opted to make Products that do not conform with the representations. Specifically, Madhava advertised and labeled the Products with the Challenged Representations but chose to manufacture the Products in such a way that the Products contain toxic phthalates and non-phthalate plasticizer DBS.

c. **Knowledge of Materiality.** Madhava knew or should have known of the Challenged Representations' materiality to consumers. *First*, manufacturers and marketers, like Madhava, generally reserve the front primary display panel of labels on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Here, the conspicuousness of the Challenged Representations on the Products' labels demonstrates Madhava's awareness of its importance to consumers and Madhava's understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representations. *Second*, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Products. Here, Madhava's consistent use of the Challenged

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Representations on countless Products as well as throughout Madhava's marketing campaign evidences Madhava's awareness that the falsely advertised Product attributes of clean and pure were and are important to consumers. This also establishes Madhava's intent to convince consumers that the Products conform to the Challenged Representations and, ultimately, drive Product sales. Thus, Madhava knew, in designing the Products, that the Challenged Representations were material to consumers—and the sales-driven revenue they represent to the company.

d. **Madhava's Continued Deception, Despite Its Knowledge.** Madhava, as the manufacturer and marketer of the Products, had exclusive control over the Challenged Representations' inclusion on the Products' labels and advertisements—i.e., Madhava readily and easily could have stopped using the Challenged Representations to sell the Products. However, despite Madhava's knowledge of both the Challenged Representations' falsity and the reasonable consumer's reliance on the prominent, front-label Challenged Representations in deciding whether to buy the Products, Madhava deliberately chose to market the Products with the Challenged Representations, thereby misleading consumers into buying or overpaying for the Products. Thus, Madhava at all relevant times knew or should have known that the Challenged Representations misled and continue to mislead reasonable consumers, such as Plaintiffs and the proposed Class Members, into buying the Products to attain the Product attributes that Madhava falsely advertised and warranted.

62. **Detriment.** Plaintiffs and similarly situated consumers would not have purchased the Products—or would not have overpaid a price premium for them—had they known that the Challenged Representations were false and misleading and, therefore, that the Products are not "Clean & Simple" and free of toxic substances as Madhava claimed, promised, warranted, advertised, and/or represented. Accordingly,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

based on Madhava's Challenged Representations, reasonable consumers, including Plaintiffs and the proposed Class Members, purchased the Products to their detriment.

### D. The Products Are Substantially Similar

63. As described herein, Plaintiffs purchased the Madhava Organic EVOO and Avocado Oil Products contained in tins (the "**Purchased Products**"). The Madhava Organic EVOO and Avocado Oil Products contained in bottles (the "**Unpurchased Products**") are substantially similar to the Purchased Products.

a. **Madhava.** All Products are manufactured, sold, marketed, advertised, and labeled by Madhava.

b. **Marketing Demographics.** All Products are marketed directly to consumers for personal consumption.

c. **Purpose.** All Products are food oils.

d. **Use.** All Products are used in the same manner: consumed as food.

e. **Challenged Representations.** All Products contain all of the Challenged Representations on their front labels.

f. **Packaging.** All Products are similarly packaged, with the sole relevant distinction being whether their containers are bottles or tins.

g. **Key Attributes.** All Products are advertised to be "Clean & Simple" and display Madhava's "Purity Award" representation within its "Clean Label Project" seal attesting to having been "Tested for 130 Contaminants." All Products contain toxic substances—phthalates and non-phthalate plasticizer DBS.

h. **Misleading Effect.** The misleading effect of the Challenged Representations on consumers is the same for all Products in that consumers overpay for products they believe to be "clean" and "pure"—i.e., free of toxic substances—when, in reality, all of Defendant's Products contain a significant amount of toxic phthalates and non-phthalate plasticizer DBS.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

### E.    No Adequate Remedy at Law

64.    **No Adequate Remedy at Law.** Plaintiffs and Class Members are entitled to equitable relief because no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution (i.e., between approximately two and six years). Thus, California Subclass members who purchased the Products more than three years prior to the filing of the complaint would be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty would be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. This includes, for example, Madhava's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations across a multitude of media platforms, including the Products' labels and Madhava's website, over a long period of time in order to gain an unfair advantage over competitor products and to exploit consumers' desire for products that comport with the Challenged Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations made on the type of products at issue). Thus, Plaintiffs and Class Members may be entitled to restitution

31

under the UCL while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes), and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require a showing of privity of contract or pre-lawsuit notice—neither of which is typically required to establish unjust enrichment/restitution. Thus, Plaintiffs and Class Members may be entitled to recover under unjust enrichment/restitution while not entitled to damages under breach of warranty where they purchased the Products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiffs and Class Members because Madhava continues to misrepresent the Products with the Challenged Representations. Injunctive relief is necessary to prevent Madhava from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures or other corrective action, is necessary to dispel the public misperception about the Products that has resulted from years of Madhava's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Products' true nature; and/or requiring prominent qualifications

and/or disclaimers on the Products' front labeling concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception—and repeat purchases based thereon—is also not available through a legal remedy (such as monetary damages). In addition, Plaintiffs are currently unable to accurately quantify the damages caused by Madhava's future harm because discovery and Plaintiffs' investigation have not concluded, rendering injunctive relief all the more necessary. For example, because the Court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, prices of past/future Product sales, and quantities of past/future Products sales.

d. **Public Injunction**. Further, because a "public injunction" is available under the UCL, damages would not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California v. Nationwide Class Claims**. Violations of the UCL, FAL, and CLRA are claims asserted against Defendant on behalf of Plaintiffs and the California Subclass, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiffs and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Nationwide Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f. **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet.

No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiffs' individual claims and any certified class or subclass. Plaintiffs therefore reserve their right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiffs and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## VI.   CLASS ACTION ALLEGATIONS

65.   **Class Definition.** Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated as members of the Class defined as follows:

- All residents of the United States who, within the applicable statute of limitations periods, purchased the Products containing one or more of the Challenged Representations on the Products' labels for purposes other than resale ("**Nationwide Class**"); *and*

- All residents of California who, within four years prior to the filing of this action, purchased the Products containing one or more of the Challenged Representations on the Products' labels for purposes other than resale ("**California Subclass**").

The "Nationwide Class" and "California Subclass" are collectively referred to as the "**Class.**"

66.   **Class Definition Exclusions.** Excluded from the Class are: (i) Madhava, its assigns, successors, and legal representatives; (ii) any entities in which Madhava has controlling interests; (iii) federal, state, and/or local governments, including, but

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

67.     **Reservation of Rights to Amend the Class Definition.** Pursuant to California Civil Code Section 382, Plaintiffs reserve the right to amend or otherwise alter the Class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Madhava, or otherwise.

68.     **Numerosity.** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the state of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

69.     **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. These common questions of law or fact include:

   a.    Whether Madhava engaged in unlawful, unfair, or deceptive business practices by advertising and selling the Products in the manners alleged;

   b.    Whether Madhava's conduct of advertising and selling the Products with the Challenged Representations despite their containing toxic phthalates and other toxic plasticizers constitutes an unfair method of competition or unfair or deceptive act or practice in violation of Civil Code Section 1750, *et seq*.;

   c.    Whether Madhava used deceptive representations in connection with the sale of the Products in violation of Civil Code Section 1750, *et seq*.;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

d.     Whether Madhava represented that the Products have characteristics that they do not have in violation of Civil Code Section 1750, *et seq.*;

e.     Whether Madhava advertised the Products with intent not to sell them as advertised in violation of Civil Code Section 1750, *et seq.*;

f.     Whether Madhava's labeling and advertising of the Products is misleading in violation of Business and Professions Code Section 17500, *et seq.*;

g.     Whether Madhava knew or by the exercise of reasonable care should have known that its labeling and advertising was and is misleading in violation of Business and Professions Code Section 17500, *et seq.*;

h.     Whether Madhava's conduct is an unfair business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

i.     Whether Madhava's conduct is a fraudulent business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

j.     Whether Madhava's conduct is an unlawful business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

k.     Whether Plaintiffs and the Class paid more money for the Products than they actually received;

l.     How much more money Plaintiffs and the Class paid for the Products than they actually received;

m.     Whether Madhava's conduct constitutes breach of warranty;

n.     Whether Plaintiffs and the Class are entitled to injunctive relief; *and*

CLASS ACTION COMPLAINT

o.    Whether Madhava was unjustly enriched through its unlawful conduct.

70.    **Predominance**. The common questions of law and fact predominate over questions that affect only individual Class Members.

71.    **Typicality.** Plaintiffs' claims are typical of the claims of the Class Members they seek to represent because Plaintiffs, like the Class Members, purchased Madhava's misleadingly and deceptively advertised Products. Madhava's unlawful, unfair, and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Madhava's conduct. Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

72.    **Adequacy.** Plaintiffs are adequate representatives of the Class they seek to represent because Plaintiffs' interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

73.    **Ascertainability.** Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Madhava, among other records within Madhava's possession, custody, or control. Additionally, further Class Member data can be obtained through additional third-party retailers who retain customer records and order histories.

74.    **Superiority and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.    Absent a Class, the members of the Class will continue to suffer damage and Madhava's unlawful conduct will continue without remedy while Madhava profits from and enjoys its ill-gotten gains;

c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Madhava committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.    When the liability of Madhava has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; *and*

e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Madhava.

75.    **Inconsistent Rulings.** Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual proposed Class members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would threaten to establish incompatible standards of conduct for Madhava.

76.    **Injunctive/Declaratory Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief are met, as Madhava has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

CLASS ACTION COMPLAINT

77.  **Manageability.** Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VII.  CAUSES OF ACTION

### COUNT ONE

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

**(*On Behalf of the California Subclass*)**

78.  **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

79.  **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiffs and a California Subclass who purchased the Products within the applicable statute of limitations.

80.  **The UCL.** California Business & Professions Code, Section 17200, *et seq.* (the **"UCL"**), prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

81.  **False Advertising Claims.** Madhava, in its advertising of the Products, made misleading statements regarding the quality and characteristics of the Products—specifically, the Challenged Representations. Such claims appear on the labels of the Products, which are sold at retail stores and point-of-purchase displays.

82.  **Madhava's Deliberately Fraudulent Marketing Scheme.** Madhava does not have any reasonable basis for the claims about the Products made on Madhava's labeling and in Madhava's advertising. Madhava knew and knows that the Products are not "Clean & Simple" nor pure because the Products contain toxic phthalates—which substantially harm various human organs and bodily systems— and other toxic plasticizers though Madhava intentionally advertised and marketed the Products with the Challenged Representations to deceive reasonable consumers.

83.    **Misleading Advertising Claims Cause Purchase of Products.** Madhava's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiffs, believing that the Products are "Clean & Simple," pure, or otherwise free from toxic substances, and that the Products are therefore purer, safer, and higher-quality alternatives to other oils on the market.

84.    **Injury in Fact.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon the Challenged Representations—namely, Plaintiffs and the California Subclass lost the purchase price for the Products they bought from Madhava.

85.    **Conduct Violates the UCL.** Madhava's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Madhava's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

86.    **No Reasonably Available Alternatives/Legitimate Business Interests.** Madhava failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

87.    **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Madhava's business. Madhava's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Madhava voluntarily alters its conduct or Madhava is otherwise ordered

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

to do so.

88.    **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiffs and the members of the California Subclass seek an order of this Court enjoining Madhava from continuing to engage, use, or employ its practice of labeling and advertising the Products with the Challenged Representations.

89.    **Causation/Damages.** As a direct and proximate result of Madhava's misconduct in violation of the UCL, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the UCL in restitution and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies, as well as injunctive relief to enjoin Madhava's misconduct to prevent ongoing and future harm that will result.

### *"Unfair" Prong*

90.    **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

91.    **Injury.** Madhava's action of mislabeling the Products with the Challenged Representations does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, receive Products of lesser standards than what they reasonably expected to receive, and are needlessly exposed to health risks by unknowingly purchasing and consuming phthalates and other plasticizers, when the Challenged Representations would lead a reasonable consumer

41

to believe that the Products are clean and pure food oil options free of toxic substances. Consumers cannot avoid any of the injuries caused by Madhava's deceptive labeling and advertising of the Products. Accordingly, the injuries caused by Madhava's deceptive labeling and advertising outweigh any benefits.

92. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

93. **No Utility.** Here, Madhava's conduct of labeling the Products with the Challenged Representations when the Products in fact contain toxic phthalates and other plasticizers has no utility and financially harms purchasers. Thus, the utility of Madhava's conduct is vastly outweighed by the gravity of harm.

94. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

95. **Unfair Conduct.** Madhava's labeling and advertising of the Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unfair conduct. Madhava knew or should have known of its unfair conduct. Madhava's Challenged Representations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

96. **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Madhava's legitimate business interests, other than the conduct described herein. For example, Madhava could have refrained from labeling the Products with the Challenged Representations or acted to ensure the Products were, indeed, "Clean and Simple" as well as "Pur[e]."

97. **Madhava's Wrongful Conduct.** All of the conduct alleged herein occurs

and continues to occur in Madhava's business. Madhava's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

98.     **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Madhava from continuing to engage, use, or employ its practices of labeling the Products with the Challenged Representations.

99.     **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Madhava's unfair conduct. Plaintiffs and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiffs and the California Subclass paid for Products that are "Clean & Simple" food oils marked by their "Purity"—and certainly free of toxic substances. Plaintiffs and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiffs seek restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Fraudulent" Prong*

100.     **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

101.     **Fraudulent & Material Challenged Representations.** Madhava used the Challenged Representations with the intent to sell the Products to consumers, including Plaintiffs and the California Subclass. The Challenged Representations are deceptive, and Madhava knew, or should have known, of its deception. The Challenged Representations are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

102.     **Fraudulent Business Practice.** As alleged herein, the labeling and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

43

advertising by Madhava constitutes a fraudulent business practice in violation of California Business & Professions Code Section 17200.

103.    **Reasonable and Detrimental Reliance.** Plaintiffs and the California Subclass reasonably and detrimentally relied on the Challenged Representations to their detriment in that they purchased the Products.

104.    **Reasonably Available Alternatives.** Madhava had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Madhava could have refrained from labeling the Products with the Challenged Representations.

105.    **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Madhava's business. Madhava's wrongful conduct is part of a pattern or generalized course of conduct.

106.    **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Madhava from continuing to engage, use, or employ its practice of labeling the Products with the Challenged Representations.

107.    **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Madhava's fraudulent conduct. Plaintiffs paid an unwarranted premium for the Products. Specifically, Plaintiffs and the California Subclass paid for Products that are "Clean & Simple" food oils marked by their "Purity"—and certainly free of toxic substances—when, in fact, the Products contain significant quantities of harmful phthalates and other toxic plasticizers. Plaintiffs and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiffs seek restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Unlawful" Prong*

108.    **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable."

44

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

*Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

109.  **Violations of CLRA and FAL.**  Madhava's labeling of the Products, as alleged herein, violates California Civil Code Section 1750, *et seq.* (the "**CLRA**"), and California Business and Professions Code Section 17500, *et seq.* (the "**FAL**"), as set forth below in the sections regarding those causes of action.

110.  **Fraud.** Additionally, Madhava's use of the Challenged Representations to sell the Products violates California Civil Code Sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth in the facts alleged above.

111.  **Additional Violations.** Madhava's conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Madhava, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code Sections 17200 through 17208.

112.  **Unlawful Conduct.** Madhava's labeling and advertising of the Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Madhava knew or should have known of its unlawful conduct.

113.  **Reasonably Available Alternatives.** Madhava had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Madhava could have refrained from labeling the Products with the Challenged Representations.

114.  **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Madhava's business. Madhava's wrongful conduct is part of a pattern or generalized course of conduct.

115.  **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiffs and the California Subclass seek an order of this Court enjoining Madhava

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

45

from continuing to engage, use, or employ its practice of deceptive advertising of the Products.

116.    **Causation/Damages.** Plaintiffs and the California Subclass have suffered injury in fact and have lost money as a result of Madhava's unlawful conduct. Plaintiffs and the California Subclass paid an unwarranted premium for the Products. Plaintiffs and the California Subclass would not have purchased the Products if they had known that Madhava purposely deceived consumers into believing that the Products were "Clean & Simple" food oils marked by their "Purity"—and certainly free of toxic substances—when they actually contained phthalates and other toxic plasticizers. Accordingly, Plaintiffs seek restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

<u>**COUNT TWO**</u>

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code § 17500, *et seq*.)**

**(*On Behalf of the California Subclass*)**

117.    **Incorporation by reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

118.    **California Subclass.** Plaintiffs bring this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

119.    **FAL Standard.** The False Advertising Law, codified at Business and Professions Code Section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

120.    **Challenged Representations Disseminated to Public.** Madhava violated Section 17500 when it advertised and marketed the Products through the unfair, deceptive, and misleading representation disseminated to the public through the Products' labeling and advertising. The Challenged Representations were deceptive because the Products do not conform to them. The Challenged

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

46

1   Representations were material because they are likely to and did mislead reasonable

2   consumers into purchasing the Products.

3        121.  **Knowledge.**  In  making  and  disseminating  the  Challenged

4   Representations  alleged  herein,  Madhava  knew  or  should  have  known  that  the

5   Challenged  Representations  were  untrue  or  misleading,  and  acted  in  violation  of

6   Section 17500.

7        122.  **Intent to sell.** Madhava's Challenged Representations were specifically

8   designed to induce reasonable consumers, like Plaintiffs and the California Subclass,

9   to purchase the Products.

10        123.  **Causation/Damages.** As a direct and proximate result of Madhava's

11   misconduct  in  violation  of  the  FAL,  Plaintiffs  and  members  of  the  California

12   Subclass were harmed in the amount of the price they paid for the Products. Further,

13   Plaintiffs and members of the Class have suffered and continue to suffer economic

14   losses and other damages including, but not limited to, the amounts paid for the

15   Products and any interest that would have accrued on those monies, in an amount to

16   be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of the

17   FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate

18   Plaintiffs and the California Subclass for said monies, as well as injunctive relief to

19   enjoin Madhava's misconduct to prevent ongoing and future harm that will result.

20        124.  **Punitive Damages.** Madhava's unfair, fraudulent, and unlawful conduct

21   described  herein  constitutes  malicious,  oppressive,  and/or  fraudulent  conduct

22   warranting  an  award  of  punitive  damages  as  permitted  by  law.

23   Madhava's misconduct is malicious as Madhava acted with the intent to cause

24   Plaintiffs and consumers to pay for Products that they were not, in fact, receiving.

25   Madhava willfully and knowingly disregarded the rights of Plaintiffs and consumers,

26   as Madhava was aware of the probable dangerous consequences of its conduct and

27   deliberately  failed  to  avoid  misleading  consumers,  including  Plaintiffs.

28   Madhava's misconduct is oppressive as, at all relevant times, said conduct was so

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Madhava's misconduct is fraudulent as Madhava, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Madhava.

<u>**COUNT THREE**</u>

**Violation of California Consumers Legal Remedies Act**

**(Cal. Civ. Code § 1750,** *et seq.***)**

**(***On Behalf of the California Subclass***)**

125.    **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

126.    **California Subclass.** Plaintiffs bring this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

127.    **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

128.    **Goods/Services.** The Products are "goods," as defined by the CLRA at California Civil Code Section 1761(a).

129.    **Madhava.** Madhava is a "person," as defined by the CLRA at California Civil Code Section 1761(c).

130.    **Consumers.** Plaintiffs and members of the California Subclass are "consumers," as defined by the CLRA at California Civil Code Section 1761(d).

131.    **Transactions.** The purchases of the Products by Plaintiffs and members

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

of the California Subclass are "transactions" as defined by the CLRA under California Civil Code Section 1761(e).

132.    **Violations of the CLRA.** Madhava violated the following sections of the CLRA by selling the Products to Plaintiffs and the California Subclass through the misleading, deceptive, and fraudulent Challenged Representations:

    a. Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

    b. Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

    c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."; *and*

    d. Section 1770(a)(16) by representing that the Products have "been supplied in accordance with a previous representation" when they have not.

133.    **Knowledge.** Madhava's use of the Challenged Representations on the Products was likely to deceive, and Madhava knew or should have known that these representations were misleading.

134.    **Malicious.** Madhava's conduct is malicious, fraudulent, and wanton in that Madhava intentionally misled consumers, including Plaintiffs, to increase the sales of the Products.

135.    **Plaintiffs Could Not Have Avoided Injury.** Plaintiffs and members of the California Subclass could not have reasonably avoided such injury. Plaintiffs and members of the California Subclass were misled and unaware of the existence of facts that Madhava suppressed and failed to disclose, and Plaintiffs and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

136.    **Causation/Reliance/Materiality.** Plaintiffs and the California Subclass suffered harm as a result of Madhava's violations of the CLRA because they relied

49

on the Challenged Representations in deciding to purchase the Products. The Challenged Representations were together a substantial factor.

137.    **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code, Section 1782, more than 30 days prior to the filing of this complaint, Plaintiffs' counsel, acting on behalf of all members of the Class, mailed a demand letter, via U.S. Certified Mail, return receipt requested, addressed to Madhava Ltd. at its headquarters and principal place of business registered with the California Secretary of State and its registered agent for service of process (4665 Nautilus Ct. S., Ste. 301, Boulder, CO 80301). The demand letter was delivered to Madhava's registered agent on or about August 14, 2024.

138.    **Causation/Damages.** As a direct and proximate result of Madhava's misconduct in violation of the CLRA, Plaintiffs and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for violation of this Act in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the California Subclass for said monies.

139.    **Injunction.** Given that Madhava's conduct violated California Civil Code Section 1780, Plaintiffs and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Madhava's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Madhava's false advertising campaign. Plaintiffs have no adequate remedy at law. Without equitable relief, Madhava's unfair and deceptive practices will continue to harm Plaintiffs and the California Subclass. Accordingly, Plaintiffs seek an injunction to enjoin Madhava from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to Section 1780(a)(2), and otherwise require

50

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Madhava to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Madhava's deceptive labeling of the Products with the Challenged Representations.

140. **Punitive Damages.** Madhava's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Madhava's misconduct is malicious as Madhava acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving. Madhava willfully and knowingly disregarded the rights of Plaintiffs and consumers, as Madhava was at all times aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. Madhava's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Madhava's misconduct is fraudulent as Madhava, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Madhava. Accordingly, Plaintiffs seek an award of punitive damages against Madhava.

## COUNT FOUR

### Breach of Warranty

### (*On Behalf of the Nationwide Class and California Subclass*)

141. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

142. **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass, members

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

of which purchased the Products within the applicable statute of limitations.

143.    **Express Warranty.** By advertising and selling the Products at issue, Madhava made promises and affirmations of fact on the Products' labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiffs and members of the Class and Madhava. Madhava purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the Challenged Representations.

144.    **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Madhava, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitutes warranties that became part of the basis of the bargain between Plaintiffs and members of the Class and Madhava—to wit, that the Products, among other things, conform to the Challenged Representations.

145.    **Breach of Warranty.** Contrary to Madhava's warranties, the Products do not conform to the Challenged Representations and, therefore, Madhava breached its warranties about the Products and their qualities.

146.    **Causation/Remedies.** As a direct and proximate result of Madhava's breach of warranty, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seek a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Madhava's misconduct to

prevent ongoing and future harm that will result.

147. **Punitive Damages.** Plaintiffs seek punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiffs and the Class. Madhava's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Madhava's misconduct is malicious as Madhava acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving. Madhava willfully and knowingly disregarded the rights of Plaintiffs and consumers, as Madhava was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. Madhava's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Madhava's misconduct is fraudulent as Madhava, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Madhava.

<u>**COUNT FIVE**</u>

**Unjust Enrichment/Restitution**

***(On Behalf of the Nationwide Class and California Subclass)***

148. **Incorporation by Reference.** Plaintiffs re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

149. **Nationwide Class & California Subclass.** Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

150. **Plaintiff/Class Conferred a Benefit.** By purchasing the Products,

53

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Plaintiffs and members of the Class conferred a benefit on Madhava in the form of the purchase price of the Products.

151.    **Madhava's Knowledge of Conferred Benefit.** Madhava had knowledge of such benefit and Madhava appreciated the benefit because, were consumers not to purchase the Products, Madhava would not generate revenue from the sales of the Products.

152.    **Madhava's Unjust Receipt Through Deception.** Madhava's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Madhava's fraudulent, misleading, and deceptive labeling and advertising.

153.    **Causation/Damages.** As a direct and proximate result of Madhava's unjust enrichment, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiffs seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiffs and the Class for said monies, as well as injunctive relief to enjoin Madhava's misconduct to prevent ongoing and future harm that will result.

154.    **Punitive Damages**. Plaintiffs seek punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiffs and the Class. Madhava's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Madhava's misconduct is malicious as Madhava acted with the intent to cause Plaintiffs and consumers to pay for Products that they were not, in fact, receiving. Madhava willfully and knowingly disregarded the rights of Plaintiffs and consumers, as Madhava was aware of the probable dangerous consequences of

its conduct and deliberately failed to avoid misleading consumers, including Plaintiffs. Madhava's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiffs and consumers to cruel and unjust hardship in knowing disregard of their rights. Madhava's misconduct is fraudulent as Madhava, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiffs and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Madhava.

## VIII.   PRAYER FOR RELIEF

155.    WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Madhava as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiffs as the Class Representative, and appointing Plaintiffs' Counsel as class counsel;

b. **Declaratory Relief:** For an order declaring that Madhava's conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

c. **Injunction:** For an order requiring Madhava to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law detailed herein. This includes, for example, orders that Madhava immediately cease and desist from selling the unlawful Products in violation of law; that enjoin Madhava from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Madhava to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Madhava's unlawful conduct; and/or that require Madhava

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre- & Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; *and*

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all issues and causes of action so triable.

Dated: December 20, 2024                    Respectfully submitted,

                                            **CLARKSON LAW FIRM, P.C.**

                                            By: */s/ Bahar Sodaify*
                                            Shireen M. Clarkson, Esq.
                                            Bahar Sodaify, Esq.
                                            Benjamin J. Fuchs, Esq.
                                            Meg Berkowitz, Esq.

                                            *Attorneys for Plaintiffs*

CLASS ACTION COMPLAINT